UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AHAMAD R. ATKINS,<br><br>　　　　Defendant. | Case No. 4:14-cr-40061-JPG-1 |

**MEMORANDUM AND ORDER**

This matter comes before the Court on a Motion for Compassionate Release. (Doc. 152). Atkins filed his motion on March 1, 2024. Being duly advised in the premises having fully considered the issues and arguments raised, the Court **DENIES** the motion.

On November 24, 2014, the movant, Ahamad R. Atkins, pled guilty to conspiracy to distribute controlled substances pursuant to 21 U.S.C. §§ 846, 841(a)(1). Atkins was sentenced, within the Guideline range, to 216 months in prison on May 18, 2015. In his present motion, Atkins argues that he qualifies for compassionate release because he received an "unusually long sentence." (hereinafter "ULS").

The Government opposes Atkin's motion for compassionate release, arguing that he does not qualify for a ULS reduction. Moreover, the Government argues that the United States Sentencing Commission (USSC) (hereinafter "Commission") exceeded their statutory authority by adopting Amendment 814—the amendment that added "unusually long sentence[s]" to the list of "extraordinary and compelling reasons" for compassionate release. This highly controversial decision by the Commission has generated a split within the Seventh Circuit. Now that *Chevron* has been overturned and courts have been directed to use *Skidmore* deference, *Chevron, U.S.A.,*

1

*Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) (overruled by *Loper Bright Enters. v. Raimondo*, 603 U.S. ___ (2024)), *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), it is unclear how much of the little available case law is even still valid. As the split will likely be resolved by the Court of Appeals, and Atkins's motion can be resolved without determining the lawfulness of the Commission's actions; the Court need not address that issue here.

## I.    LEGAL STANDARD

The First Step Act expanded the sentence reduction provisions[1] of § 3582(c)(1)(A) by opening the door for a defendant to move for a reduction rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction. . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

---

[1] The reduction provisions are often referred to as "compassionate release" because historically the grounds for reduction have included the defendant's health and/or age as "extraordinary and compelling reasons" for immediate release. Release was called "compassionate" because it was viewed as showing sympathy for an ailing or aged defendant.

The final clause of § 3582(c)(1)(A) requires the Court to consider whether a sentence reduction would be consistent with U.S.S.G. § 1B1.13 (2023) (effective Nov. 1, 2023), the policy statement applicable to motions filed by the BOP Director or the defendant. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(a)(2).[2] The policy statement further defines "extraordinary and compelling reasons" to include, *inter alia*, cases where a defendant qualifies for a ULS reduction. The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied their burden.

Under Amendment 814, defendants may move for compassionate release if they are serving an "unusually long sentence.":

> Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

§ 1B1.13(b)(6). Thus, to qualify for a ULS reduction, a defendant must show that:

(1) Their sentence is "unusually long;"

(2) They have served at least ten years of that sentence;

(3) The law has changed; and,

---

[2] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

3

> (4) As a result of that change, there would be a "gross disparity" between a sentence imposed today and their current sentence—after full consideration of the individualized circumstances.

While these elements are relatively straightforward, the "unusually long" element has been problematic. Previously, this Court analyzed the "unusually long" element and found that a sentence is "unusually long" when a movant's "sentence is 'unusually' longer than [the movant's] Guideline range at sentencing." *United States v. Wrice*, 2024 WL 3534856, *17–18 (S.D. Ill. July 25, 2024).

If a defendant satisfies all the elements for a ULS reduction, then a "change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason" for compassionate release. *Id*.

If a defendant does *not* qualify, a change in law *cannot* be considered when evaluating whether the defendant presents "extraordinary and compelling reasons." However, if a defendant can show they qualify for compassionate release on *other* grounds, a change in law "may be considered for purposes of determining the *extent*" of a reduction. USSG § 1B1.13(c) (emphasis added) (hereinafter "Limitation Provision").

Essentially, if a prisoner does not qualify for ULS, a change in law cannot be grounds for compassionate release—neither in whole nor in part. However, if a prisoner can establish other grounds for compassionate release, then a change in law can be considered in determining a new appropriate sentence.

Regardless, if a defendant proves "extraordinary and compelling reasons" exist for a reduction, the Court then considers the § 3553(a) factors in determining whether compassionate

4

release is warranted. If the 3553(a) factors weigh against compassionate release, a court can deny the motion on those grounds.

## II.    ANALYSIS

Here, Atkins alleges that he qualifies for a ULS reduction and highlights his attempts at rehabilitation as evidence of satisfying the § 3553(a) factors. However, Atkins fails to satisfy the elements necessary for a ULS reduction, additionally, the § 3553(a) factors do not warrant his release.

Atkins has served more than ten years of his sentence; therefore, he satisfies that element of a ULS reduction, but only that element. It is not entirely clear what precisely the change in law is that Atkins believes would create a "gross disparity" between his current sentence and a sentence imposed today. Also, the Court observes that Atkins received a sentence within his Guideline range at sentencing; thus, his sentence is not "unusually long," and he fails to present a prima facie case for a ULS reduction.

Additionally, even if Atkins satisfied the criteria for a ULS reduction, the § 3553(a) factors do not warrant a reduction here. Atkins highlights his attempts at rehabilitation but rehabilitation alone is insufficient. There are several flaws with Atkins's argument. Not only was Atkins responsible for a significant amount of illicit drugs, Atkins also possesses a long history of criminality—including firearms offenses. As the Court observed at his sentencing, Atkins is not an addict, he has made selling drugs a living. Atkins is a quintessential example of a career criminal.

Moreover, while Atkins argues he has rehabilitated, his record while incarcerated suggests otherwise. It would be one thing if Atkins had demonstrated his ability to follow rules and law since his incarceration, however, Atkins has received disciplinary violations while in

prison. These were not small or minor breaches of conduct, they were serious; they range from fighting other inmates to possessing dangerous weapons. Atkins has served only a slim majority of his sentence so far, yet, evidently, that has been insufficient. Hopefully, serving the latter half of his sentence will be more impactful in shaping Atkins's behavior and attitudes.

As things currently stand, the Court finds that the § 3553(a) factors heavily weigh against Atkins's release at this time.

### III.   CONCLUSION

Finding that Atkins fails to establish a prima facie case for compassionate release, and that the § 3553(a) factors heavily weigh against release, the Court hereby **DENIES** Atkins's motion for compassionate release. (Doc. 152).

**IT IS SO ORDERED.**
**DATED:  October 29, 2024**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**